UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

NATALIE TUMBARELLO,

        Plaintiff,

  -v-                             **COMPLAINT**

CITY OF NEW YORK, OFFICER TIANA        **JURY TRIAL DEMANDED**
GUGLIELMO, SERGEANT JOHN FALZARANO,
OFFICER ANTHONY ROBLES, CAPTAIN      24-cv-3604
EMMANUEL CABREJA, MARIE VICIDOMINI,

        Defendants.

-------------------------------------------------------------X

      Natalie Tumbarello ("Plaintiff"), by and through her counsel, the undersigned, states and alleges as follows against The City of New York ("Defendant City"), Officer Tiana Guglielmo ("Defendant Guglielmo"), Sergeant John Falzarano ("Defendant Falzarano"), Officer Anthony Robles ("Defendant Robles"), Captain Emmanuel Cabreja ("Defendant Cabreja"), and Marie Vicidomini ("Defendant Vicidomini"):

## PRELIMINARY STATEMENT

      1.    Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 for conspiracy, false arrest, malicious prosecution, denial of fair trial, and failure to intervene. Plaintiff also asserts related claims under New York State Law.

      2.    Plaintiff seeks monetary damages (compensatory and punitive) against Defendants, as well as an award of costs and attorneys' fees, and further relief as the Court deems just and proper.

**JURISDICTION**

3.     The federal claims in this action are brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction for the federal claims is conferred upon this court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (a)(4).

4.     Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over the non-federal claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy which gives rise to the federally based claim and cause of action.

**JURY TRIAL DEMANDED**

5.     Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury for all her claims as pleaded herein.

**VENUE**

6.     Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to this complaint occurred within this district.

**PARTIES**

7.     Plaintiff is a resident of Richmond County, NY.

8.     Defendant Guglielmo is and was at all times relevant herein an officer, employee, and agent of the New York City Police Department ("NYPD").

9.     Defendant Guglielmo is sued in her individual and official capacities. At all times mentioned herein, Defendant Guglielmo acted under the color of state law, in the capacity of an officer, employee, and agent of Defendant City.

2

10.     Defendant Falzarano is and was at all times relevant herein an officer, employee, and agent of the New York City Police Department ("NYPD").

11.     Defendant Falzarano is sued in his individual and official capacities. At all times mentioned herein, Defendant Guglielmo acted under the color of state law, in the capacity of an officer, employee, and agent of Defendant City.

12.     Defendant Robles is and was at all times relevant herein an officer, employee, and agent of the New York City Police Department ("NYPD").

13.     Defendant Robles is sued in his individual and official capacities. At all times mentioned herein, Defendant Robles acted under the color of state law, in the capacity of an officer, employee, and agent of Defendant City.

14.     Defendant Cabreja is and was at all times relevant herein an officer, employee, and agent of the New York City Police Department ("NYPD").

15.     Defendant Cabreja is sued in his individual and official capacities. At all times mentioned herein, Defendant Guglielmo acted under the color of state law, in the capacity of an officer, employee, and agent of Defendant City.

16.     Defendant Vicidomini is a resident of Richmond County, NY.

17.     Defendant City is a municipality created and authorized under the laws of New York State. It is authorized to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## NOTICE OF CLAIM

18.     Plaintiff served a Notice of Claim on Defendant City within ninety days of the incident. Defendant City conducted a hearing pursuant to General Municipal Law 50-h on May 1, 2024.

19.     This action commenced within one year and ninety days after the occurrence of the event upon which the claims are based.

## STATEMENT OF FACTS

### Background

20.     Plaintiff is an educator who has taught in the New York City public school system for 28 years. Her husband, Edward Tumbarello, has served in the NYPD for 19 years and currently holds the rank of sergeant.

21.     Many years ago, Plaintiff discontinued her relationship with her mother, Linda Vadala, because her mother persistently subjected Plaintiff to emotional abuse.

22.     Plaintiff's decision to end her relationship with her mother estranged her from the rest of her biological family, except for her father, Frank Vadala.

23.     Frank Vadala lived on the ground level of 42 Bartow Street, Richmond County, New York ("42 Bartow Street") with Linda Vadala.

24.     Plaintiff's sister, brother-in-law, and their children lived—and still live—on the upper level of 42 Bartow Street.

25.     Defendant Vicidomini is Plaintiff's cousin. Although Defendant Vicidomini does not live at 42 Bartow Street, she visits her family there.

26.     Frank Vadala became terminally ill in November 2022 and was hospitalized.

27.     Frank Vadala chose Plaintiff to be his health care proxy in December 2022.

28.     After Frank Vadala was released from the hospital in April 2023, Plaintiff began to visit him at 42 Bartow Street.

29.     Although Frank Vadala consistently wanted Plaintiff to regularly visit him, the rest of Plaintiff's family who lived at or frequented 42 Bartow Street (collectively referred to as "family members")—from whom she was estranged—did not want her to visit 42 Bartow Street.

30.     Prior to May 20, 2023, the NYPD went to 42 Bartow Street to resolve issues related to the care and visitation of Frank Vadala. None of those visits involved arrests.

31.     As a result of those prior visits, Defendant Guglielmo and Defendant Robles spent time checking-in on the family members at 42 Bartow Street and heard the family members disparage Plaintiff and provide inaccurate information about her.

<u>May 20, 2023: Before the Incident</u>

32.     Defendant Guglielmo and Defendant Robles visited the family at 42 Bartow Street during the afternoon of May 20, 2023. While there, Defendant Guglielmo spoke with Defendant Vicidomini and Linda Vadala, and she told them she wanted to see how they were doing.

33.     Defendant Vicidomini and Linda Vadala told Defendant Guglielmo that Plaintiff had visited Frank Vadala at 42 Bartow Street the previous day, May 19, 2023.

34.     Linda Vadala told Defendant Guglielmo that she had asked Plaintiff to leave, and Defendant Vicidomini told Defendant Guglielmo that she called 911.

35.     Linda Vadala told Defendant Guglielmo that Plaintiff had called Frank Vadala earlier that day, May 20, 2023, to get his permission to visit that day.

36.     Defendant Guglielmo asked Linda Vadala if she had considered getting an order of protection against Plaintiff.

37.     Ignoring the fact that Frank Vadala had given Plaintiff permission to visit 42 Bartow Street, Defendant Guglielmo told Linda Vadala and Defendant Vicidomini that

"obviously if [Plaintiff] trespasses at a point when you tell her to leave and she's trespassing, that would be an arrest situation."

38.     Defendant Guglielmo then stated, "do I want to arrest someone that's upset about their dad being sick, no, I don't think it's nice, but…" and then her voice trailed off.

39.     Defendant Guglielmo told Linda Vadala that she was going to leave, but she would be checking in on her more frequently. Linda Vadala then invited Defendant Guglielmo and Defendant Robles to visit 42 Bartow Street that summer for a barbecue.

<u>May 20, 2023: The Incident</u>

40.     At approximately 6:35 PM the same day, Plaintiff went to 42 Bartow Street with Edward Tumbarello to visit Frank Vadala, administer his intravenous medications, and take him to her home.

41.     Earlier that day, Frank Vadala gave Plaintiff permission to visit him at 42 Bartow Street.

42.     Linda Vadala opened the door and Plaintiff walked into the vestibule area of the home, which leads to two additional doors—a door for the ground level unit and a door for the upstairs unit.

43.     Plaintiff then attempted to open the door that leads to the ground level unit, where Frank Vadala lived. As she attempted to push open the door, she felt resistance—Defendant Vicidomini was behind the door trying to prevent Plaintiff from opening it.

44.     Defendant Vicidomini then grabbed Plaintiff by the throat, forcibly squeezed her neck, and aggressively pushed her backward.

45.     Defendant Vicidomini's use of force was unjustified.

46.     Defendant Vicidomini's unlawful use of force caused Plaintiff—who suffers from asthma and other neck issues—to experience pain in her neck and throat and to suffer an asthma attack later that day that required her hospitalization.

47.     Plaintiff was able to open the door enough to enter the home and walk to Frank Vadala.

48.     Defendant Vicidomini called 911 when Plaintiff entered the home.

49.     Plaintiff remained inside the home and calmly collected Frank Vadala's belongings and medication to bring with him to her home.

<u>Police Arrive on Scene</u>

50.     Defendant Guglielmo and Defendant Robles responded at 42 Bartow Street. Plaintiff, Defendant Vicidomini, and other family members were inside of the living room. Defendant Guglielmo first asked, "what is going on?"

51.     Defendant Vicidomini told Defendant Guglielmo that Plaintiff pushed her way in. Defendant Guglielmo then addressed Plaintiff and said, "okay so let's go outside then, perfect."

52.     The first thing Plaintiff said to Defendant Guglielmo was that Defendant Vicidomini put her hand on her neck and choked her.

53.     Defendant Vicidomini then responded that her neck was red and there were no marks on Plaintiff's neck.

54.     Defendant Vicidomini's neck was not red or in any way injured.

55.     Defendant Guglielmo ordered Plaintiff, who was with Frank Vadala, to exit the home and then told Plaintiff that "we were here earlier, so we know very well what's going on here."

56.     Defendant Robles added, "we've been here a lot, so relax."

57.     After Plaintiff went outside, she told Defendant Robles that Frank Vadala asked Plaintiff to visit him there, and that when she entered the home, Defendant Vicidomini put her hand on Plaintiff's neck, choked her, and pushed her backwards. Plaintiff also explained that she was Frank Vadala's healthcare proxy and that she had recorded proof of a conversation with her father from earlier that day during which he gave Plaintiff permission to visit him.

58.     While Plaintiff spoke with Defendant Robles outside, Defendant Guglielmo remained inside the home, and Defendant Vicidomini further explained the incident to her. In doing so, Defendant Vicidomini admitted, while gesturing with her hand towards Defendant Guglielmo's neck area, that she pushed Plaintiff away from the door of the home.

59.     Defendant Vicidomini then alleged that Plaintiff shoved her out of the way.

60.     Defendant Guglielmo asked Defendant Vicidomini if she would like to press charges, and Defendant Vicidomini responded, "yes, please."

61.     Defendant Vicidomini then called her wife in front of Defendant Guglielmo. During that phone call, Defendant Vicidomini told her wife that Plaintiff "didn't grab me by the neck, she was pushing the door open and because of my back I had no choice but to let go." Defendant Vicidomini further stated on the phone, in front of Defendant Guglielmo, that "it's not like she put her hands on me."

62.     Defendant Falzarano responded to the scene, and Defendant Guglielmo, ignoring Defendant Vicidomini's statements that Plaintiff did not put her hands on her, told Defendant Falzarano that Plaintiff pushed Defendant Vicidomini by the neck.

63.     Defendant Falzarano then went outside, where Plaintiff was located, to ask her what happened. Plaintiff told Defendant Falzarano that Frank Vadala asked Plaintiff to visit him,

and when she entered the home, Defendant Vicidomini put her hand on Plaintiff's neck, choked her, and pushed her backwards.

64.     Defendant Falzarano then went back inside 42 Bartow Street and told Defendant Guglielmo that Plaintiff was making the same allegations against Defendant Vicidomini that Defendant Vicidomini had made against Plaintiff.

65.     After hearing Defendant Falzarano indicate that Plaintiff and Defendant Vicidomini were making similar claims against each other, Defendant Guglielmo knew that, based on Plaintiff's allegations, Defendant Falzarano could order that Defendant Vicidomini be arrested for assault and strangulation.

66.     To protect Defendant Vicidomini, Defendant Guglielmo immediately shifted the issue from assault and strangulation to trespass by asking the family members inside, while in front of Defendant Falzarano, the leading question of "[Plaintiff] wasn't invited?"

67.     Family members inside of 42 Bartow Street—from whom Plaintiff is estranged—responded that Plaintiff was not invited.

68.     Defendant Guglielmo knew that Plaintiff had been invited—earlier that day, Linda Vadala told Defendant Guglielmo that Plaintiff called Frank Vadala to get his permission to visit 42 Bartow Street.

69.     Defendant Guglielmo then spoke more with Defendant Vicidomini, who told Defendant Guglielmo that Plaintiff did not try to choke her with her hand, and it was the door that got her neck as Plaintiff pushed the door.

70.     Knowing that Defendant Vicidomini said words that exculpated Plaintiff of strangulation and assault, Defendant Gugliemo fished for more information to justify an arrest by

responding, "yeah, but how did it stop." Defendant Vicidomini then stated that she let go of the door because she felt pulling in her back.

71.    Although Defendant Vicidomini's response did not make out any chargeable offense, Defendant Guglielmo, knowing that Defendant Vicidomini wanted Plaintiff arrested, then told Defendant Falzarano that Defendant Vicidomini wanted to press charges.

72.    Defendant Falzarano stated, "alright, she wasn't allowed here."

73.    Defendant Gugliemo then put on gloves and went outside with Defendant Falzarano to arrest Plaintiff.

74.    Defendant Falzarano told Plaintiff they were arresting Plaintiff because she was not allowed inside 42 Bartow Street and Defendant Vicidomini was claiming injuries.

75.    Plaintiff and her husband, Edward Tumbarello, then told Defendant Falzarano that Plaintiff was allowed there because she was given permission by Frank Vadala.

76.    Defendant Falzarano told Plaintiff and Edward Tumbarello that he spoke to everyone inside 42 Bartow Street, and they did not want Plaintiff there.

77.    That was not true. They did not speak with Frank Vadala.

78.    Frank Vadala was at 42 Bartow Street during the entire incident, and Defendant Falzarano did not, at any point, speak with him and ask whether he had given permission for Plaintiff to be there.

79.     Defendant Guglielmo did not, at any point, speak with Frank Vadala and ask him whether he had given permission for Plaintiff to be there.

80.    Plaintiff then played, in front of Defendant Guglielmo, Defendant Robles, and Defendant Falzarano, an audio recording of the phone call from that morning between Plaintiff and Frank Vadala, in which Frank Vadala gave Plaintiff permission to visit him.

81.     Defendant Guglielmo then asked Plaintiff if she had a time stamp for the call, and Plaintiff answered that she did.

82.     Defendant Guglielmo responded, "either way…" and Defendant Falzarano confirmed, "either way, you're going to have to be taken in," and then told Defendant Guglielmo to arrest Plaintiff.

83.     Despite the direct evidence that Plaintiff had permission to be at 42 Bartow Street, the admission by Defendant Vicidomini that Plaintiff had not laid a hand on her, and the absence of injuries, Defendant Guglielmo placed handcuffs on Plaintiff.

84.     The arrest of Plaintiff was not supported by probable cause and was therefore unlawful.

85.     Plaintiff then said, in the presence of Defendant Guglielmo, Defendant Robles, and Defendant Falzarano that she had a recording from the incident that included admissions from Defendant Vicidomini that she put her hands on Plaintiff, and she asked them to arrest Defendant Vicidomini.

86.     Defendant Falzarano, Defendant Robles, and Defendant Guglielmo did not ask to review that video footage.

87.     Defendant Falzarano told Plaintiff that he would arrest Defendant Vicidomini.

88.     Defendant Falzarano did not arrest Defendant Vicidomini.

89.     Defendant Guglielmo told Plaintiff that she would deal with the claims against Defendant Vicidomini later.

90.     Defendant Guglielmo did not later deal with the claims against Defendant Vicidomini—she never dealt with them. Although Defendant Guglielmo then spent over half an

11

hour with Defendant Vicidomini to fill out a Domestic Incident Report, she did not confront Defendant Vicidomini with the allegations Plaintiff brought against her.

91.     While filling out the Domestic Incident Report, Defendant Guglielmo asked Defendant Vicidomini if she felt pain during the incident. Defendant Vicidomini did not respond that she felt pain. Instead, she stated that she felt "something…pulling"

92.     Although Defendant Vicidomini did not say that she felt pain, Defendant Guglielmo falsely wrote in her Domestic Incident report that Defendant Vicidomini felt back pain.

93.     Defendant Guglielmo later forwarded this fabricated information to the Richmond County District Attorney's Office.

94.     Although Defendant Vicidomini previously told Defendant Guglielmo that it was the door that contacted her neck and she told her wife—while in front of Defendant Guglielmo—that Plaintiff did not put her hands on her, while filling out the Domestic Incident Report Defendant Guglielmo asked Defendant Vicidomini which hand Plaintiff used to push her neck.

95.     To act in concert with Defendant Guglielmo and support the false arrest and malicious prosecution of Plaintiff, Defendant Vicidomini then changed her story by falsely alleging that Plaintiff pushed her neck with her right hand.

<u>Failed Follow-up Investigation at the 122nd Precinct</u>

96.     After Plaintiff was unlawfully arrested, Edward Tumbarello demanded that the duty captain come to 42 Bartow Street to review the arrest.

97.     Edward Tumbarello, a sergeant in the NYPD, was off duty during the incident.

98.     Defendant Cabreja was the captain who responded to 42 Bartow Street.

99.     Edward Tumbarello asked to speak with Defendant Cabreja about the incident on the scene. Defendant Cabreja instructed him to go to the 122nd Precinct to discuss the matter. Edward Tumbarello followed that instruction and went to the 122nd Precinct.

100.     Defendant Cabreja instructed officers to bring all participants in the incident—including Defendant Vicidomini—to the 122nd Precinct.

101.     At the 122nd Precinct, Edward Tumbarello spoke with Defendant Cabreja.

102.     Edward Tumbarello told Defendant Cabreja that he and Plaintiff were invited to 42 Bartow Street by Frank Vadala.

103.     Edward Tumbarello told Defendant Cabreja that Plaintiff had proof on her phone that Frank Vadala gave Plaintiff permission to visit 42 Bartow Street. Edward Tumbarello told Defendant Cabreja that Plaintiff showed that proof to Defendant Guglielmo, Defendant Robles, and Defendant Falzarano.

104.     Edward Tumbarello told Defendant Cabreja that he observed Defendant Vicidomini choke Plaintiff.

105.     Edward Tumbarello told Defendant Cabreja that Plaintiff had video evidence on her phone that included admissions by Defendant Vicidomini that she put her hands on Plaintiff.

106.     Edward Tumbarello told Defendant Cabreja that he observed that Plaintiff did not put a hand on Defendant Vicidomini.

107.     Defendant Cabreja ignored the exculpatory evidence provided by Edward Tumbarello and failed to intervene to prevent the false arrest and malicious prosecution of Plaintiff.

<u>Fabrication of Evidence by Defendant Guglielmo</u>

108.     Defendant Guglielmo was Plaintiff's arresting officer.

109.    At the 122nd Precinct, Defendant Guglielmo filled out an arrest report to document Plaintiff's arrest.

110.    In Plaintiff's arrest report, Defendant Guglielmo alleged that Defendant Vicidomini had redness to her neck.

111.    Defendant Guglielmo knew that was not true.

112.    In Plaintiff's arrest report, Defendant Guglielmo alleged that Defendant Vicidomini felt pain in her back.

113.    Defendant Guglielmo knew that was not true.

114.    In Plaintiff's arrest report, Defendant Guglielmo alleged that Plaintiff pushed Defendant Vicidomini's neck with her right hand.

115.    Defendant Guglielmo knew that was not true.

116.    Defendant Guglielmo knowingly forwarded the fabricated information in the arrest report to the Richmond County District Attorney's Office.

117.    Defendant Guglielmo reviewed and signed a criminal complaint that charged Plaintiff with Assault in the Third Degree (P.L. § 120.00(1), Attempted Criminal Obstruction of Breathing or Blood Circulation (P.L. § 110/121.11), and Harassment in the Second Degree (P.L. § 240.26(1)).

118.    The criminal complaint against Plaintiff included factual allegations that Plaintiff intended to impede Defendant Vicidomini's normal breathing and circulation of blood by pushing her neck, which caused redness to her neck and caused substantial pain to her back.

119.    Defendant Guglielmo knew that the charges and factual allegations in the criminal complaint that she signed were fabricated.

120.    Defendant Guglielmo forwarded that fabricated information to the Richmond County District Attorney's Office.

The Prosecution

121.    After Plaintiff was arrested, she suffered an asthma attack and tachycardia.

122.    Plaintiff was hospitalized while in police custody.

123.    At the hospital, staff administered a nebulizer to Plaintiff to treat her asthma. Staff gave her pain medication for the injuries to her neck, and they monitored her tachycardia.

124.    Once Plaintiff was released from the hospital, she was escorted to Central Booking.

125.    Plaintiff was incarcerated overnight.

126.    Plaintiff was then brought to Richmond County Criminal Court and arraigned on Docket CR-002854-23RI.

127.    Docket CR-002854-23RI charged Plaintiff with Assault in the Third Degree (P.L. § 120.00(1), Attempted Criminal Obstruction of Breathing or Blood Circulation (P.L. § 110/121.11), and Harassment in the Second Degree (P.L. § 240.26(1)).

128.    The criminal complaint underlying Docket CR-002854-23RI included the factual allegations of Defendant Vicidomini that were sworn to by Defendant Guglielmo.

129.    Defendant Vicidomini knew that the allegations were false.

130.    Defendant Guglielmo knew that the allegations were false.

131.    The Richmond County Criminal Court issued an order of protection in favor of Defendant Vicidomini, which ordered Plaintiff to stay away from Defendant Vicidomini and not contact her.

132.    Plaintiff was released at her arraignment.

133.     During the pendency of the case, the Richmond County Criminal Court ordered Plaintiff to appear in court multiple times—June 26, August 16, and September 5.

134.     Docket CR-002854-23RI was dismissed and sealed on September 5, 2023.

<u>The Aftermath of the Incident</u>

135.     Frank Vadala's condition dramatically worsened after seeing Plaintiff get wrongfully arrested, and he was consequently hospitalized on May 21, 2023.

136.     Plaintiff's family members used the false arrest and malicious prosecution of Plaintiff as the factual predicate to file a petition against Plaintiff in Richmond County Family Court and obtain orders of protection against Plaintiff.

137.     Plaintiff's family members also used the false arrest and malicious prosecution of Plaintiff as the factual predicate to file an application in New York State Supreme Court, Richmond County, for the family members to be appointed guardianship powers over Frank Vadala, to suspend Plaintiff as Frank Vadala's health care proxy, and restrict Plaintiff's access to Frank Vadala.

138.     On June 18, 2023, the day before Frank Vadala died, Plaintiff had a court order from the Honorable Charles Troia—who presided over the guardianship proceeding—that ordered Plaintiff to have access to Frank Vadala between 4 PM – 7 PM every day. Plaintiff and Edward Tumbarello arrived at the hospital at 4 PM on June 18, 2023, to visit her father, but her family members—who had orders of protection against Plaintiff—were at Frank Vadala's bedside and refused to leave the room. Edward Tumbarello got authorities involved because the family members were willfully violating Judge Troia's order, but Plaintiff was only able to secure less than an hour with Frank Vadala during his last moments. This deprivation was the direct result of the Defendants' malicious and wrongful acts.

139.   The effects of Plaintiff's false arrest and malicious prosecution are enduring.

140.   Plaintiff's husband, Edward Tumbarello, is a member of the NYPD, and the police misconduct Plaintiff experienced has devastated her core beliefs about the NYPD and her family's sense of identity.

141.   Plaintiff now suffers from PTSD, and she attends therapy sessions to help her cope with her trauma.

142.   As a direct and proximate result of the said acts of the Defendants, Plaintiff sustained the following injuries and damages:

      a.   Deprivation of her rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution;

      b.   Deprivation of her rights under the laws and Constitution of the State of New York;

      c.   Emotional distress, physical pain, degradation and suffering;

      d.   Lost income.

## CAUSES OF ACTION

## FIRST CLAIM

**Conspiracy to Deprive Plaintiff Her Constitutional Rights Under 42 U.S.C. Section 1983**

143.   Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if fully stated herein.

144.   Defendant Guglielmo and Defendant Vicidomini had a tacit agreement to act in concert to inflict an unconstitutional injury to Plaintiff by falsely arresting Plaintiff, to wit:

      a.   Defendant Guglielmo visited the family members—including Defendant Vicidomini—at 42 Bartow Street on multiple occasions and was friendly with them.

Defendant Guglielmo knew that family members at 42 Bartow Street—except for Frank Vadala—did not want Plaintiff there.

b. During the afternoon of May 20, 2023, Defendant Guglielmo suggested to Linda Vadala and Defendant Vicidomini that she could arrest Plaintiff for trespass if she remained at 42 Bartow Street after they told her to leave. Defendant Guglielmo and Defendant Vicidomini knew that Plaintiff was not trespassing at 42 Bartow Street, because she was invited there by Frank Vadala.

145. Defendant Guglielmo and Defendant Vicidomini both committed overt acts in furtherance of their goal, to wit:

a. During the evening of May 20, 2023, Defendant Vicidomini called the police when Plaintiff arrived at 42 Bartow Street.

b. Defendant Vicidomini knew that Plaintiff was not trespassing.

c. Defendant Guglielmo responded to 42 Bartow Street and arrested Plaintiff.

d. Defendant Guglielmo willfully ignored evidence presented to her that proved Plaintiff was not trespassing, and she willfully ignored Defendant Vicidomini's self-contradictory statements about the assault and strangulation that obviated a finding of probable cause to arrest Plaintiff.

e. Knowing that Defendant Vicidomini provided information that precluded a finding of probable cause because Defendant Vicidomini did not indicate that she was in pain and she stated that Plaintiff did not touch her with her hand, Defendant Guglielmo asked pointed leading questions and fished for more information to justify Plaintiff's arrest.

f.   Defendant Vicidomini, acting in concert with Defendant Guglielmo, changed her
narrative to help justify Plaintiff's arrest by fabricating that Plaintiff's hand grabbed
her neck.

g.   Defendant Guglielmo filled in the remaining gaps in Defendant Vicidomini's story by
fabricating additional facts, including that Defendant Vicidomini was injured.

146.   Defendant Guglielmo and Defendant Vicidomini's actions caused Plaintiff to
suffer the damages and injuries hereinbefore alleged.

147.   Although Defendant Vicidomini is a private party, private parties act under the
color of state law if they jointly participate or conspire with a state actor to violate an
individual's federal rights.

## SECOND CLAIM

### False Arrest Under 42 U.S.C. § 1983

148.   Plaintiff realleges and reiterates all allegations set forth in the preceding
paragraphs as if fully stated herein.

149.   Defendant Guglielmo and Defendant Falzarano deprived Plaintiff of her rights
afforded by the Fourth and Fourteenth Amendments to the U.S. Constitution by wrongfully and
illegally arresting and detaining Plaintiff.

150.   The wrongful and unlawful apprehension, arrest, detention, and imprisonment of
Plaintiff was carried out without probable cause, without a warrant, and without privilege or
consent.

151.   As a direct and proximate result of the misconduct and abuse of authority detailed
above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### False Arrest Under New York State Law

152.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if fully stated herein.

153.     Defendant Guglielmo, Defendant Falzarano, and Defendant Vicidomini subjected Plaintiff to false arrest and deprivation of liberty without probable cause.

154.     Plaintiff was conscious of her confinement.

155.     Plaintiff did not consent to her confinement.

156.     Plaintiff's arrest was not otherwise privileged.

157.     Defendant City, as the employer of Defendant Guglielmo and Defendant Falzarano, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

158.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CLAIM

### Malicious Prosecution Under 42 U.S.C. § 1983

159.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if fully stated herein.

160.      Defendant Guglielmo and Defendant Falzarano violated Plaintiff's Fourth and Fourteenth Amendment rights by maliciously prosecuting Plaintiff.

161.     Defendant Guglielmo and Defendant Falzarano commenced a prosecution against Plaintiff.

162.     Defendant Guglielmo and Defendant Falzarano lacked probable cause to believe Plaintiff was guilty or that the prosecution would succeed.

163.    Defendant Guglielmo and Defendant Falzarano acted with malice.

164.    In the absence of probable cause, malice may be inferred.

165.    The prosecution was terminated in Plaintiff's favor.

166.    As direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTH CLAIM

### Malicious Prosecution Under New York State Law

167.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if fully stated herein.

168.    Defendant Guglielmo, Defendant Falzarano, and Defendant Vicidomini maliciously prosecuted Plaintiff.

169.    Defendant Guglielmo, Defendant Falzarano, and Defendant Vicidomini commenced a prosecution against Plaintiff.

170.    Defendant Guglielmo, Defendant Falzarano, and Defendant Vicidomini lacked probable cause to believe Plaintiff was guilty or that the prosecution would succeed.

171.    Defendant Guglielmo, Defendant Falzarano, and Defendant Vicidomini acted with malice.

172.    In the absence of probable cause, malice may be inferred.

173.    The prosecution was terminated in Plaintiff's favor.

174.    Defendant City, as employer of Defendant Guglielmo and Defendant Falzarano, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

175.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CLAIM

### Denial of Right to a Fair Trial Under 42 U.S.C. § 1983

176.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if fully stated herein.

177.    Defendant Guglielmo deprived Plaintiff of her Fourth, Fifth, and Fourteenth Amendment right to a fair trial.

178.    As the arresting officer of Plaintiff, Defendant Guglielmo was an investigating official for Plaintiff's arrest.

179.    Defendant Guglielmo deliberately forwarded fabricated information to the Richmond County District Attorney's Office.

180.    The fabricated information forwarded by Defendant Guglielmo was likely to influence a jury's verdict.

181.    As a direct and proximate result of this unlawful conduct, Plaintiff was deprived of her liberty and sustained the damages hereinbefore alleged.

## SEVENTH CLAIM

### Failure to Intervene Pursuant to 42 U.S.C. Section 1983

182.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

183.    Defendant Robles and Defendant Cabreja had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights by other law enforcement officers.

184.    Defendant Robles and Defendant Cabreja knew of the exculpatory evidence that precluded any finding of probable cause to justify the arrest or prosecution of Plaintiff.

22

185.    Defendant Robles and Defendant Cabreja knew that Plaintiff was falsely arrested and maliciously prosecuted.

186.    Defendant Robles and Defendant Cabreja failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of her constitutional rights despite knowing about such violations and having a realistic opportunity to do so.

187.    As a direct a proximate result of the aforementioned conduct of Defendant Robles and Defendant Cabreja, Plaintiff sustained the damages and injuries hereinbefore alleged.

## EIGHTH CLAIM

### Assault Under New York State Law

188.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if fully stated herein.

189.    By the actions described, Defendant Vicidomini placed Plaintiff in apprehension of imminent and harmful offensive bodily contact.

190.    As a direct a proximate result of the aforementioned conduct, Plaintiff sustained the damages and injuries hereinbefore alleged.

## NINETH CLAIM

### Battery Under New York State Law

191.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if fully stated herein.

192.    As detailed above, Defendant Vicidomini intentionally touched Plaintiff in an offensive and harmful manner, and she intentionally subjected her to offensive and harmful contact.

193.    As a direct a proximate result of the aforementioned conduct, Plaintiff sustained the damages and injuries hereinbefore alleged.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief jointly and severally against the Defendants:

    a.  An order awarding compensatory damages for Plaintiff in an amount to be determined at trial;

    b.  An order awarding punitive damages in an amount to be determined at trial;

    c.  A court order pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

    d.  Such other and further relief as this Court may deem appropriate.

DATED:    May 17, 2024
               New York, New York

*Cody Warner*
Cody Warner, Esq.
11 Broadway
Suite 615
New York, NY 10004
cody@codywarnercriminaldefense.com
212-627-3184

*Attorney for Plaintiff*